# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

LUKAS LEMEUNIER                                    CIVIL ACTION

VERSUS                                             NO.  12-0169

TERRY TERRELL, WARDEN                              SECTION "J"(2)

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. It was recently reassigned to me. Record Doc. No. 16. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and the petition **DISMISSED WITH PREJUDICE**.

_____

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

# I.    FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Lukas Lemeunier, is incarcerated in Allen Correctional Center in Kinder, Louisiana.[2]  On October 3, 2003, Lemeunier was charged in a two-count bill of information in the 24th Judicial District Court for Jefferson Parish.  Count one charged Lemeunier with aggravated burglary in violation of La. Rev. Stat. § 14:60.  Count two charged Lemeunier with possession of methadone in violation of La. Rev. Stat. § 40:967 C.[3]  The Louisiana First Circuit Court of Appeal summarized the facts of the case as follows:

> Regarding the events on the date of the incident, Larry Rolling ("Mr. Rolling") testified at trial that, at approximately 10:30 p.m. on September 2, 2003, his wife, Sharlene Rolling ("Mrs. Rolling"), woke him up and told him someone was outside the house.  Mr. Rolling went to the front room and looked outside but did not see anyone.  He opened the front door at which time a hand came through the door and started spraying pepper spray.  Mr. Rolling dropped to his knees and attempted to hold the door closed while Mrs. Rolling called 911.  When the perpetrator heard Mrs. Rolling calling the police, he fled.  Mr. Rolling did not get a look at the intruder.
>
> Officer Matthew Pervis ("Officer Pervis") and Officer Dominick Rodi ("Officer Rodi") of the Kenner Police Department responded to the call.  Officer Pervis, who was in another unit, went to the Rolling residence while Officer Rodi checked out the area for suspects.  Officer Rodi saw a man, later identified as Lemeunier, dressed in all dark clothing enter a vehicle about two blocks from the residence and drive away.  Lemeunier, the driver, did not put the headlights on.  After he failed to signal a turn, Officer Rodi activated his emergency lights and attempted to stop the vehicle.  According to Officer Rodi, the car did not stop

---

[2]Rec. Doc. No. 4.

[3]St. Rec. Vol. 6 of 8. A handwritten notation on the bill of information reflects that count two was nolle prosequi. The bill of information also charged co-defendant, Kenneth Oswald, with one count of possession of hydrocodone and one count of possession of alprazolam. On July 20, 2004, Oswald pled guilty to both counts.

until another police unit approached from the opposite direction. Lemeunier and his passenger, co-defendant Kenneth Oswald, were detained and placed in the back of a police unit. Officer Rodi did not interview the victims.

Officer Pervis responded to the 911 call. When he arrived at the Rollings' home, he could feel the effects of the pepper spray inside the doorway. He obtained a description of the perpetrator from Mrs. Rolling, which was disseminated over the radio. In the 911 call, Mrs. Rolling identified the perpetrator as "Luke," a person who must know her daughter.

Lemeunier was transported to lockup and strip searched. Officer Ronald Reggio participated in the arrest. He testified that, when Lemeunier pulled down his underwear, a can of mace fell from his crotch area.

Mrs. Rolling testified she had previously met Lemeunier at her daughter's home on more than one occasion. She further noted he had come to the house a few days before the incident, but she thought he was crazy or drunk, and she slammed the door in his face. On the night of the incident, Mrs. Rolling saw the perpetrator outside before the door was opened. When his arm reached into the house spraying pepper spray, she noted he had on a dark glove. She stated that Lemeunier kept saying he wanted her pain medication. Mrs. Rolling was brought to the scene where Lemeunier was held and positively identified him as the person who tried to break into her home.

At trial, Lemeunier testified he had been buying prescription pain pills from Mrs. Rolling and her daughter for three to four years. He explained he would "just go right in the house," buy the pills, and leave. He stated he had last been to Mrs. Rolling's house only two to three days before the incident.

Lemeunier testified that, on the night of the incident, he and his friend went to Mrs. Rolling's house to buy pills. He was driving his girlfriend's car, and her key chain had a mace spray on it. According to Lemeunier, he walked up to the Rollings' front door and knocked. Mr. Rolling answered the door with a gun in his hand and yelled at him not to come to the house so late. Mrs. Rolling then came to the door at which time Lemeunier told her he had just come to buy pills. Mrs. Rolling responded by stating she was calling the police. Lemeunier testified that Mr. Rolling was pointing the gun directly at him so he sprayed the mace in Mr. Rolling's direction in order to get away. He stated he left in his car and was stopped by the police shortly thereafter. Lemeunier denied getting his hand or arm shut in the door and maintained the entire incident happened on the front porch of the Rollings' home. Lemeunier testified that he did not have a mace can in his pants.[4]

---

[4] State v. Lemeunier, 2007-KA-0230, 986 So.2d 130 (La. App. 5th Cir. 5/27/08); St. Rec. Vol. 6 of 8.

On February 10, 2004, the trial court granted defense counsel's motion and ordered Lemeunier examined to determine his competency to stand trial.[5] On March 24, 2004, following a hearing, the trial court found Lemeunier competent to stand trial.[6]

On May 25, 2004, Lemeunier's counsel filed a motion to suppress the evidence and a motion to suppress the confession.[7] On August 3, 2004, the trial judge conducted a hearing and denied Lemeunier's motions to suppress.[8]

Trial commenced on January 19, 2005.[9] On January 21, 2005, Lemeunier was found guilty as charged.[10] On May 24, 2005, Lemeunier was sentenced to 15 years imprisonment with credit for time served.[11] On that same date, the State filed a multiple bill of information and Lemeunier pled guilty to being a second felony offender.[12] The trial court resentenced Lemeunier to 25 years imprisonment at hard labor to run concurrently with the sentence he was then serving and with credit for time served.[13]

---

[5]St. Rec. Vol. 1 of 8, pp. 54-55.

[6]St. Rec. Vol. 6 of 8, minute entry, 03/24/04.

[7]St. Rec. Vol. 1 of 8, pp. 74-77.

[8]St. Rec. Vol. 1 of 8, pp. 208-248.

[9]St. Rec. Vol. 2 of 8, p. 261.

[10]St. Rec. Vol. 6 of 8, p. 166.

[11]St. Rec. Vol. 6 of 8, p. 175, minute entry, 05/24/05.

[12]St. Rec. Vol. 6 of 8, pp. 173-74.

[13]St. Rec. Vol. 6 of 8, p. 175, minute entry, 05/24/05.

On August 25, 2005, Lemeunier filed an "Application for Post Conviction Relief - Out of Time Appeal Request."[14]  On October 17, 2005, the district court issued an order granting Lemeunier an out-of-time appeal.[15]

Lemeunier's appeal was not lodged with the Louisiana Fifth Circuit until April 3, 2007.[16]  On January 7, 2008, Lemeunier's counsel filed an appellate brief asserting the following claims:  (1) The trial court erred in admitting evidence of pills found in Lemeunier's car and limiting the prescription records defense counsel could use in questioning Sharlene Rolling.  (2) The trial court erred in allowing Dr. Melvin Schultz to testify and denying the production of Rolling's medical records.  (3) The trial court erred in failing to declare a mistrial following Dr. Schultz's testimony.  (4) The evidence was insufficient to support Lemeunier's aggravated burglary conviction.  (5) Lemeunier received an excessive sentence.  (6) Lemeunier is entitled to a new trial because hearing transcripts, in particular the transcript related to Lemeunier's motion for Rolling's

---

[14]St. Rec. Vol. 6 of 8, pp. 176-188.  August 25, 2005 is the date Lemeunier signed his pleading. A handwritten notation on the pleading reflects that it was not received by the court until "10-12-05."

[15]St. Rec. Vol. 6 of 8, p. 192, Order, 10/17/05.

[16]St. Rec. Vol. 6 of 8, April 16, 2007 letter from state appellate court to Lemeunier. The almost 18-month delay between the time Lemeunier was granted an out-of-time appeal and the time the appeal was lodged was apparently attributable to disruptions caused by Hurricane Katrina. In a March 12, 2007 letter, the court reporter advised that transcripts of Lemeunier's trial court proceedings conducted between January 13 and May 17, 2004 were lost in the storm. St. Rec. Vol. 6 of 8.

medical and prescription records, was missing.[17]  On May 27, 2008, the Louisiana Fifth

Circuit affirmed Lemeunier's conviction and sentence.[18]

On June 27, 2008, Lemeunier's counsel filed a "Petition for Writ of

Certiorari/Motion for Extension of Time to Supplement" in the Louisiana Supreme Court

seeking "an extension of time to supplement this Petition for Certiorari."[19]  On July 2,

2008, Lemeunier's counsel filed an "Appendix to Petition for Writ of Certiorari."[20]  On

August 18, 2008, counsel filed a "Supplemental Petition for Writ of Certiorari," asserting

the same claims that had been raised in the Louisiana Fifth Circuit.[21]  On March 6, 2009,

the Louisiana Supreme Court denied Lemeunier's writ application without reasons.[22]

Lemeunier's conviction became final 90 days later, on June 4, 2009, when he did

not file a writ application with the United States Supreme Court.  Roberts v. Cockrell,

319 F.3d 690, 694 (5th Cir. 2003) (citing 28 U.S.C. § 2244(d)(1)(A); Flanagan v.

---

[17]St. Rec. Vol. 8 of 8, Brief of Appellant, State v. Lemeunier, 2007-KA-0230, 01/08/08.

[18]State v. Lemeunier, 2007-KA-0230, 986 So.2d 130 (La. App. 5th Cir. 05/27/08); St. Rec. Vol. 6 of 8.

[19]St. Rec. Vol. 8 of 8, Writ of Certiorari/Extension of Time, State v. Lemeunier, 2008-K-1403, 06/27/08.

[20]St. Rec. Vol. 8 of 8, Appendix to Petition for Writ of Certiorari, State v. Lemeunier, 2008-K-1403, 07/2/08.

[21]St. Rec. Vol. 8 of 8, Supplemental Petition for Writ of Certiorari, State v. Lemeunier, 2008-K-1403, 08/18/08.

[22]State v. Lemeunier, 3 So.3d 481 (La. 2009).  St. Rec. Vol. 6 of 8, Supreme Court Opinion, 2008-K-1403, 03/06/09.

Johnson, 154 F.3d 196, 200-01 (5th Cir. 1998)); Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (citing 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. R. 13(1).

On May 26, 2010, Lemeunier filed an application for post-conviction relief in the state trial court.[23] Lemeunier raised the following claims: (1) He was denied his right to appeal due to the missing hearing transcript related to his motion for production of Rolling's medical records. (2) He was denied his right to effective assistance of counsel on appeal. (3) He was denied his right to confrontation. (4) The defense was denied access to Rolling's medical records. (5) The defense was denied full access to Rolling's prescription records. (6) His sentence was unconstitutional. (7) The testimony of the State's expert witness, Daniel Waguespack, was erroneous. (8) His right to present a defense was abridged due to Dr. Schultz's inadmissible testimony. (9) The trial court erred in not granting a mistrial due to Dr. Schultz's inadmissible testimony. On July 16, 2010, the State filed its response to Lemeunier's post-conviction application.[24] On July 26, 2010, the state trial court denied Lemeunier post-conviction relief.[25]

---

[23]St. Rec. Vol. 7 of 8, Uniform Application for Post-Conviction Relief (signed 05/26/10).

[24]St. Rec. Vol. 7 of 8, State's Response to Post Conviction Relief, 07/16/10.

[25]St. Rec. Vol. 7 of 8, District Court Order, signed 07/26/10.

On August 6, 2010, Lemeunier filed a supplemental memorandum in support of post-conviction relief in the state trial court,[26] raising two additional claims: (Supplemental Claim 1) The evidence was insufficient to support his conviction. (Supplemental Claim 2) He was denied effective assistance of counsel. On August 27, 2010, the state trial court again denied Lemeunier relief, stating: "On July 26, 2010, this court denied Petitioner's application for post-conviction relief. Nothing in the Petitioner's present pleading affects this court's ruling."[27]

On September 22, 2010, Lemeunier filed a "Supervisory Application for Writ of Review" in the Louisiana Fifth Circuit concerning the district court's denial of post-conviction relief.[28] In his writ application, Lemeunier asserted the following claims: (1) He is entitled to a new trial due to missing transcripts. (2) He was denied his right to present evidence and his right to confrontation when the trial court denied him access to Rolling's medical records. (3) He was denied his right to cross-examine Dr. Schultz. (4) The trial court erred by limiting his access to Rolling's prescription records. (5) He

---

[26]St. Rec. Vol. 7 of 8, Supplemental Memorandum, signed 08/06/10. Lemeunier stated that he filed his supplemental memorandum after the state trial court had denied him post-conviction relief because he did not receive the state trial court's July 26, 2010 order until August 26, 2010. St. Rec. Vol. 8 of 8. Notice of Intent to Seek Supervisory Writs/and Motion for Extension of Time, signed 08/28/10.

[27]St. Rec. Vol. 7 of 8, district court order, signed 08/27/10.

[28]St. Rec. Supplemental Vol. 1 of 1, Supervisory Application for Writ of Review, signed 9/22/10.

was denied effective assistance of appellate counsel.  On December 8, 2010, the Louisiana Fifth Circuit Court of Appeal denied Lemeunier relief.[29]

On January 5, 2011, Lemeunier filed an "Application for Writ of Certiorari" with the Louisiana Supreme Court asserting the same claims he had raised in the state appellate court.[30]   On January 13, 2012, the Louisiana Supreme Court denied Lemeunier's writ application without reasons.[31]

## II.   FEDERAL HABEAS PETITION

On February 2, 2012, the clerk of this court filed Lemeunier's petition for federal habeas corpus relief in which he raises the following grounds for relief:  (1) He was not allowed to cross-examine State witness Dr. Schultz effectively.  (2) He was denied his right to present Rolling's medical records for impeachment purposes.  (3) His right to present Rolling's prescription records for impeachment purposes was limited.  (4) There was insufficient evidence to support his conviction.  (5) The trial court erred in allowing the State to present other crimes evidence.  (6) He was denied a meaningful appeal. (7) He was denied effective assistance of appellate counsel because counsel failed to raise any argument based upon the missing transcript related to his motion for production

---

[29]St. Rec. Vol. 8 of 8, State v. Lemeunier, 2010-KH-0839 (La. App. 5th Cir. 12/08/10).

[30]St. Rec. Vol. 8 of 8, Application for Writ of Certiorari, signed 01/05/11.

[31]State ex rel. Lemeunier v. State, 77 So.3d 959 (La. 2012), 2011-KH-0072.  Rec. Doc. No. 4-2, p. 14.

of Rolling's medical records.[32]  The State filed a response in opposition to Lemeunier's petition conceding timeliness, but asserting that claims (1), (2), (3) and (6) are procedurally barred; claim (5) is unexhausted; and claims (4) and (7) are without merit.[33] Lemeunier filed a traverse to the State's response.[34]

III.   GENERAL STANDARDS OF REVIEW

The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[35] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Lemeunier's petition, which, for reasons discussed below, is deemed filed in this federal court on January 17, 2012.[36]

---

[32]Rec. Doc. No. 4.

[33]Rec. Doc. No. 14.

[34]Rec. Doc. No. 15.

[35]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[36]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).  Lemeunier's petition was filed by the clerk of court on February 2, 2012, when he paid the filing fee.  Lemeunier dated his signature

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)). The State concedes and I find that Lemeunier's habeas petition is timely. The State asserts that claims (1), (2), (3) and (6) are procedurally barred and claim (5) is unexhausted. For the reasons outlined below, I find that claims (1), (2), (3), (6) and (7) are not procedurally barred and must be addressed on the merits. However, claim (5) concerning the admission of other crimes evidence is procedurally barred and must be dismissed on that basis.

## IV.     PROCEDURAL DEFAULT

### (A)     CLAIM 5 BARRED

In his fifth claim, Lemeunier argues that the trial court erred in admitting evidence regarding the prescription drugs found in his car at the time of his arrest.[37] Lemeunier contends that he was on trial for aggravated burglary not possession of drugs and

---

on the petition on January 17, 2012. Rec. Doc. No. 4, p. 48. This is the earliest date appearing in the record on which he could have delivered his pleadings to prison officials for mailing. The fact that he did not pay the filing fee until February 2, 2012, does not alter the application of the mailbox rule to his pro se petition. See Cousin v. Lensing, 310 F.3d 843 (5th Cir. 2002) (mailbox rule applies even if inmate did not pay the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

[37]Lemeunier's claim in this regard is designated as claim (5) in the instant report and recommendation.

testimony regarding his possession of drugs constituted inadmissible other crimes evidence.[38]  On appeal, the Louisiana Fifth Circuit did not address the merits of Lemeunier's claim, stating:

> The record shows evidence of the prescription drugs found in Lemeunier's car was first admitted into evidence with no objection.  When a defendant fails to lodge a contemporaneous objection to a witness's testimony, he waives his right to assert the error on appeal.  LSA-C.Cr.P. art. 841(A).  An objection made after the evidence is before the jury comes too late.

Lemeunier, 986 So.2d at 136 (footnote omitted).[39]  This was the last reasoned decision on the issue.  Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991).

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state law ground that is both independent of the federal claim and adequate to support that judgment.  This doctrine of procedural default provides that, in connection with a petition for habeas corpus relief, "a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. A state court's invocation of a procedural rule to deny a prisoner's claims precludes

---

[38]Rec. Doc. No. 4-1, pp. 36-37.

[39]The transcript reflects that counsel objected to State expert witness Daniel Waguespack's testimony regarding the drugs found in Lemeunier's car. St. Rec. Vol. 2 of 8, pp. 465-68. However, Officer Dominick Rodi had earlier testified extensively regarding the prescription drugs found in Lemeunier's car before an objection was asserted. St. Rec. Vol. 2 of 8, pp. 301, 303-10.

federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. . . ." Martinez v. Ryan, 132 S.Ct. 1309, 1316A (2012)(citations omitted)(quoting Coleman v. Thompson, 501 U.S. 722, 755 (1991); Glover v. Cain, 128 F.3d 900, 902 (5th Cir.1997); Amos v. Scott, 61 F.3d 333, 338 (5th Cir.1995) (citing Harris v. Reed, 489 U.S. 255, 260, 262 (1989)). This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review. Amos, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim raised in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. Harris, 489 U.S. at 263; Glover, 128 F.3d at 902. In this case, the last reasoned decision of the Louisiana Fifth Circuit barred review of Lemeunier's claim regarding other crimes evidence, finding that no contemporaneous objection had been made to the initial admission of the evidence.

(1)      <u>INDEPENDENT AND ADEQUATE</u>

For the foregoing state law procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate. A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar. <u>Amos</u>, 61 F.3d at 338. The United States Fifth Circuit has held that "[a] state court expressly and unambiguously bases its denial of relief on a state procedural default even if it alternatively reaches the merits of a [petitioner's] claim." <u>Fisher v. Texas</u>, 169 F.3d 295, 300 (5th Cir.1999). To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. <u>Glover</u>, 128 F.3d at 902.

The Louisiana Fifth Circuit found that Lemeunier failed to preserve his challenge to other crimes evidence because he failed to raise a contemporaneous objection when the evidence was introduced. The principal Louisiana statutory provision requiring a contemporaneous objection is La.Code Crim. P. art. 841(A), which provides that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." It is well-settled that Louisiana's contemporaneous objection rule is an independent and adequate state procedural ground, regularly applied by the Louisiana courts. <u>Duncan v. Cain</u>, 278 F.3d 537, 541 (5th Cir.2002) (citing <u>Wainwright v. Sykes</u>,

433 U.S. 72, 87–88 (1977)); Marshall v. Cain, 2006 WL 2414073 (E.D. La. Aug. 18, 2006) (Zainey, J.). When the state court relies on this procedural default in dismissing a claim, as in Lemeunier's case, the claim is barred from federal habeas review. Duncan, 278 F.3d at 541; Riles v. McCotter, 799 F.2d 947, 953 (5th Cir.1986).

Because the state courts' decisions on this claim rested on an independent and adequate state rule of procedural default, this court may not review Lemeunier's claim that other crimes evidence was impermissibly admitted.

(2)    CAUSE AND PREJUDICE

A federal habeas petitioner may be excepted from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." Glover, 128 F.3d at 902 (citing Coleman, 501 U.S. at 731–32); Amos, 61 F.3d at 338–39 (citing Harris, 489 U.S. at 262; Engle v. Isaac, 456 U.S. 107, 129 (1982)).

To establish cause for a procedural default, petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. Murray v. Carrier, 477 U.S. 478, 488 (1986). The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed

to raise the claim despite recognizing it, does not constitute cause for a procedural default.  <u>Id</u>. at 486.

Lemeunier has not offered any cause for his default on the instant claim that would excuse the procedural bar imposed by the state courts.  My review of the record does not support a finding that any factor external to the defense prevented him from raising this claim in a procedurally proper manner.  The record also does not reflect any action or inaction on the part of the State that prevented him from doing so.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown."  <u>Hogue v. Johnson</u>, 131 F.3d 466, 497 (5th Cir.1997) (citing <u>Engle</u>, 456 U.S. at 134 n. 43).  Having failed to show an objective cause for his default, this court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice.  <u>Ratcliff v. Estelle</u>, 597 F.2d 474 (5th Cir.1979) (citing <u>Lumpkin v. Ricketts</u>, 551 F.2d 680, 681–82 (5th Cir.1977)).

Lemeunier's other crimes evidence argument is therefore procedurally barred from review by this federal habeas corpus court.  <u>See</u> <u>Trest v. Whitley</u>, 94 F.3d 1005, 1008 (5th Cir.1996) (habeas review precluded when petitioner neglected to allege actual prejudice and cause of failure to comply with state procedural rule concerning time

restriction on filing for state post-conviction relief), <u>vacated on other grounds</u>, 522 U.S. 87 (1998).[40]

(3)    <u>FUNDAMENTAL MISCARRIAGE OF JUSTICE</u>

Lemeunier may avoid this procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed.  <u>Hogue</u>, 131 F.3d at 497 (citing <u>Sawyer v. Whitley</u>, 505 U.S. 333, 339 (1992)).  To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence." <u>Kuhlmann v. Wilson</u>, 477 U.S. 436, 454 (1986); accord <u>Murray</u>, 477 U.S. at 496; <u>Glover</u>, 128 F.3d at 902.  To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt.  <u>Campos v. Johnson</u>, 958 F.Supp. 1180, 1195 (W.D. Tex.1997) (footnote omitted); <u>Nobles</u>, 127 F.3d at 423 n. 33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.")  When the petitioner has not adequately asserted his actual innocence, his

---

[40]The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not required to raise the procedural default argument sua sponte.  <u>Id</u>.

procedural default cannot be excused under the "fundamental miscarriage of justice" exception. <u>Glover</u>, 128 F.3d at 903.

Lemeunier does not present any evidence and the record contains nothing that suggests his actual innocence on the underlying conviction. He fails to present any evidence or argument of actual innocence. For these reasons, Lemeunier has failed to overcome the procedural bar to his other crimes evidence claim (claim 5). This claim is procedurally barred and must be dismissed with prejudice for that reason. In light of my finding that Lemeunier is procedurally barred from raising claim (5) on federal habeas review, it is unnecessary to address the State's argument that he also failed to exhaust his state remedies as to that claim.

(B)    <u>CLAIMS 1, 2, 3 AND 6 NOT PROCEDURALLY DEFAULTED</u>

Lemeunier argues that his right to present a defense was hampered because he was not provided with Rolling's medical records and his use of Rolling's prescription records was limited. Lemeunier also argues that he was denied a meaningful appeal and effective assistance of appellate counsel due to counsel's failure to raise an argument based upon the absence of a transcript of the hearing of his motion for production of Rolling's medical records.[41] Lemeunier raised these same claims on post-conviction, and the state now argues that they are also barred from review in this court under the doctrine of

---

[41] These claims are designated as claims (2), (3) and (6) in this report and recommendation.

18

procedural default. The Louisiana Fifth Circuit barred review of these claims "pursuant to La.C.Cr.P. art. 930.4(A) which provides, 'unless required in the interest of justice, any claim for relief which was fully litigated in an appeal from the proceedings leading to the judgment of conviction and sentence shall not be considered.'"[42] This was the last reasoned state court decision on these issues. Ylst, 501 U.S. at 802.

As noted above, a federal court generally will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment. This "independent and adequate state law" doctrine applies to both substantive and procedural grounds.

Under Louisiana law, Article 930.4(A) precludes post-conviction review of claims already "fully litigated" on direct appeal. Bennett v. Whitley, 41 F.3d 1581 (5th Cir. 1994). The presumption in the rule is that the claims were not new or different from something previously litigated and resolved on appeal. Id. at 1583. However, "the bar imposed by article 930.4(A) is not a procedural bar in the traditional sense, nor is it a decision on the merits." Id. For this reason, the bar does not preclude habeas review of claims (2), (3) and (6). This court simply "look[s]-through" the ruling on collateral

---

[42]St. Rec. Vol. 8 of 8, State v. Lemeunier, 2010 KH 839 (La. App. 5 Cir. 12/08/10).

review and considers only the direct appeal proceeding.  Id. at 1582–83 (5th Cir.1994).

Thus, I will address the merits of claims (2), (3) and (6).

As to Lemeunier's claim (1) that he was not allowed properly to cross-examine

State witness Dr. Schultz, the Louisiana Fifth Circuit on direct appeal declined to

consider the claim due to Lemeunier's failure to set forth any supporting argument or law

in violation of  Rule 2-12.4 of the Uniform Rules, Courts of Appeal.[43]  However, during

post-conviction proceedings, the Louisiana Fifth Circuit, implicitly finding that

Lemeunier was in compliance with Rule 2-12.4, in fact addressed the merits of the claim,

denying Lemeunier relief.[44]  This was the last reasoned decision on the issue.  Ylst, 501

U.S. at 802.  Accordingly, I will address the merits of claim (1) in this proceeding.

V.      STANDARDS OF MERITS REVIEW

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions

of fact, questions of law and mixed questions of fact and law in federal habeas corpus

proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct

. . . and we will give deference to the state court's decision unless it 'was based on an

unreasonable determination of the facts in light of the evidence presented in the State

---

[43]Lemeunier, 986 So.2d at 138.  St. Rec. Vol. 6 of 8.

[44]Lemeunier, 2010-KH-839.  St. Rec. Vol. 8 of 8.

court proceeding.'"  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28

U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001).  The amended statute also

codifies the "presumption of correctness" that attaches to state court findings of fact and

the "clear and convincing evidence" burden placed on a petitioner who attempts to

overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and

fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state

court's decision "'was contrary to, or involved an unreasonable application of, clearly

established [Supreme Court precedent.]'"  Penry v. Johnson, 215 F.3d 504, 507 (5th Cir.

2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S.

849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210

F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1)

standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ
> if the state court arrives at a conclusion opposite to that reached by this
> Court on a question of law or if the state court decides a case differently
> than this Court has on a set of materially indistinguishable facts. Under the
> "unreasonable application" clause, a federal habeas court may grant the
> writ if the state court identifies the correct governing legal principle from
> this Court's decisions but unreasonably applies that principle to the facts
> of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000);  Penry, 532 U.S. at 792-93;

Hill, 210 F.3d at 485.  "'A federal habeas court may not issue the writ simply because

that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'" Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone, 535 U.S. 685, 699 (2002). Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert. denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

## VI. TRIAL COURT'S EVIDENTIARY RULINGS (CLAIMS 1, 2 and 3)

Lemeunier asserts that the trial court erred in denying defense counsel's motion to obtain a copy of Rolling's medical records and in limiting counsel's use of Rolling's prescription records.[45] Lemeunier argues that defense counsel's cross-examination of Rolling and her doctor, Dr. Schultz, was hampered as a result of the trial court's alleged errors. Lemeunier contends he was denied his right to present his "sole defense," that he was at the Rollings' residence to purchase pills, not to burglarize them.[46]

---

[45]Defense counsel's cross-examination was limited to Rolling's prescription drug use during the six-month period before the subject burglary. St. Rec. Vol. 2 of 8, p. 431.

[46]Rec. Doc. No. 4-1, p. 19.

A federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." Wilkerson v. Whitley, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted); see also Swarthout v. Cooke, __ U.S. __, 131 S. Ct. 859, 861 (2011) (federal habeas review does not lie for errors of state law); accord Molo v. Johnson, 207 F.3d 773, 776 n.9 (5th Cir. 2000); Narvaiz v. Johnson, 134 F.3d 688, 695 (5th Cir. 1998) (citing Estelle, 502 at 67-68; Lewis v. Jeffers, 497 U.S. 764, 780 (1990); West v. Johnson, 92 F.3d 1385, 1404 (5th Cir. 1996)); see also Hogue v. Johnson, 131 F.3d 466, 506 (5th Cir. 1997) (a disagreement as to state law is not cognizable on federal habeas review). Habeas corpus review is limited to questions of constitutional dimension, and federal courts generally do not review the admissibility of evidence under state law. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Gonzales v. Thaler, 643 F.3d 425, 429 (5th Cir. 2011); Jernigan v. Collins, 980 F.2d 292, 298 (5th Cir. 1992).

Thus, the states are free to implement procedures regarding the admission and/or exclusion of evidence, provided those procedures do not infringe on a constitutional guarantee. Burgett v. Texas, 389 U.S. 109, 113-14 (1967); Williams v. Price, 343 F.3d 223, 230 n.3 (3d Cir. 2003); Pemberton v. Collins, 991 F.2d 1218, 1223 (5th Cir. 1993); Nees v. Culbertson, 406 F.2d 621, 625 (5th Cir. 1969); Tillman v. Thaler, No. A-09-CA-582-SS, 2010 WL 2731762, at *13 (W.D. Tex. July 9, 2010). Lemeunier's claims that the trial court erred in denying him access to Rolling's medical records and limiting his use of her prescription records may support federal habeas corpus relief only if the state

court evidentiary rulings violate due process in such a way as to render Lemeunier's criminal proceedings fundamentally unfair. Lisenba v. California, 314 U.S. 219, 236-37 (1941); Gonzales v. Thaler, 643 F.3d 425, 430 (5th Cir. 2011); see Peters v. Whitley, 942 F.2d 937, 940 (5th Cir. 1991) (habeas corpus review is proper only to determine whether a state trial judge's error is so extreme as "to render the trial fundamentally unfair or violate an explicit constitutional right"). Federal habeas corpus relief may be granted on erroneous state evidentiary rulings only if the evidence at issue is "a crucial, critical, or highly significant factor in the context of the entire trial." Thomas v. Lynaugh, 812 F.2d 225, 230 (5th Cir. 1987) (citations omitted); accord Gonzales, 643 F.3d at 430; Wood v. Quarterman, 503 F.3d 408, 414 (5th Cir. 2007).

The question of whether evidence is constitutionally admitted or excluded is a mixed question of law and fact. Livingston v. Johnson, 107 F.3d 297, 309 (5th Cir.), cert. denied, 522 U.S. 880 (1997); Tyson v. Trigg, 883 F.Supp. 1213, 1218 (S.D. Ind. 1994) aff'd, 50 F.3d 436 (7th Cir. 1995), cert. denied, 516 U.S. 1041 (1996). Under the applicable standard of review, this court therefore must determine whether the state courts' decisions are contrary to or involve an unreasonable application of Supreme Court precedent.

A defendant has a constitutional right to present a complete defense. Taylor v. Illinois, 484 U.S. 400, 408 (1988). "For the exclusion of evidence to violate this right by denying the accused a fundamentally fair trial, the evidence must be 'material,' in the

constitutional sense that it 'creates a reasonable doubt that did not otherwise exist . . . ."

Jimenez v. Walker, 458 F.3d 130, 146 (2nd Cir. 2006), cert. denied, 549 U.S. 1133 (2007)

(quoting United States v. Agurs, 427 U.S. 97, 112-13 (1976)). "'If there is no reasonable

doubt about guilt whether or not the additional evidence is considered, there is no

justification for a new trial.' But "if the verdict is already of questionable validity,

additional evidence of relatively minor importance might be sufficient to create a

reasonable doubt.'" Id. at 146-47 (quoting Agurs, 427 U.S. at 112-13). "As with many

rights, the right to present a defense is not unlimited." Jimenez, 458 F.3d at 147. "[W]e

have never questioned the power of States to exclude evidence through the application of

evidentiary rules that themselves serve the interests of fairness and reliability – even if the

defendant would prefer to see that evidence admitted." Crane v. Kentucky, 476 U.S. 683,

690 (1986) (citing Chambers v. Mississippi, 410 U.S. 284, 302 (1973)).    "The

Constitution leaves to the judges who make decisions 'wide latitude' to exclude evidence

that is . . . 'only marginally relevant' . . . .   Id. at 690 (quoting Delaware v. Van Arsdall,

475 U.S. 673, 679 (1986)).

On direct appeal, the Louisiana Fifth Circuit found that Lemeunier "fails to show

the relevancy of Mrs. Rolling's prescriptions beyond the period to which he was

limited."[47]  The court further noted that substantial evidence regarding Rolling's medical

---

[47]Lemeunier, 986 So.2d at 137.  St. Rec. Vol. 6 of 8.

history and prescription use was in fact brought to the jury's attention. On direct examination, it was established that Rolling "had two prior surgeries and receives treatment at pain management clinics."[48] On cross-examination, defense counsel elicited testimony from Rolling regarding her extensive use of pain medication and established that Rolling's daughter "abuses and illegally obtains prescription drugs."[49] During post-conviction proceedings, the Louisiana Fifth Circuit found that Rolling's medical records were irrelevant, reasoning:

> He [Mr. Lemeunier] was able to fully cross-examine Dr. Shultz, and the medical records he wanted were irrelevant. In point of fact, the relevancy of the entire line of questioning, including the requested information, is highly questionable. Relevant evidence is that which tends to prove or negate the commission of the offense and the intent to commit the offense. La. C.E. art. 401. Despite Lemeunier's continual efforts to suggest otherwise, Mrs. Rolling was the victim in this case of an aggravated burglary. Her medical history, condition, and treatment are completely irrelevant to the elements of the offense with which Lemeunier was charged. Lemeunier, [986 So.2d] at 139.[50]

At issue was Lemeunier's guilt or innocence on the charge of aggravated burglary. La. Rev. Stat. § 14:60 defines aggravated burglary as the unauthorized entry of any inhabited dwelling with the intent to commit a felony or any theft therein, if the offender is armed with a dangerous weapon, or commits a battery upon any person while in such

---

[48]Id. St. Rec. Vol. 2 of 8, pp. 353-59.

[49]Id.; St. Rec. Vol. 2 of 8, pp. 436-54.

[50]Lemeunier, 2010-KH-839, St. Rec. Vol. 8 of 8. On direct appeal the Louisiana Fifth Circuit set forth the above reasoning in dicta. On post-conviction, the state appellate court adopted the above reasoning "as the holding of this Court . . . ."

place, or while entering or leaving such place. Lemeunier contends that the excluded evidence was relevant to show that Rolling had a large quantity of pain pills and that he went to the Rollings' home to obtain pain pills. However, what Lemeunier intended to obtain, whether pills or something else, is irrelevant for purposes of determining his guilt or innocence on the charge of aggravated burglary. Evidence of Rolling's medical history and use of pain medication was in fact introduced into evidence. Rolling testified that she had undergone unsuccessful surgeries to alleviate her pain and was required to take large amounts of pain medication.[51]

A mere showing of some relevancy is insufficient to warrant habeas relief. Jimenez, 458 F.3d at 147 (though the excluded evidence was relevant to petitioner's defense, habeas relief was denied absent a showing that the trial court's exclusion "was so plainly unconstitutional that it was objectively unreasonable for the [trial court] to conclude otherwise") (citing Williams v. Taylor, 529 U.S. 362, 409-10 (2000)); Henry v. Kernan, 197 F.3d 1021, 1031 (9th Cir. 1999), cert. denied 528 U.S. 1198 (2000) (even when it appears the evidentiary ruling was erroneous, federal courts will interfere only if it appears the ruling violated fundamental due process and the right to a fair trial).

I find that Lemeunier has failed to show that his trial was rendered fundamentally unfair by virtue of the trial court's exclusion of Rolling's medical records and complete

---

[51]St. Rec. Vol. 2 of 8, pp. 353-59; 436-54.

prescription records. Even if the additional evidence about which he complains would have been introduced, substantial evidence of his guilt was already of record, and this additional, irrelevant evidence would not have created a reasonable doubt as to his guilt. The trial court's evidentiary rulings were not contrary to and did not involve an unreasonable application of clearly established Supreme Court law.

Lemeunier also argues that because the trial court limited his use of Rolling's prescription records, he was denied his right to impeach and confront Rolling. According to Lemeunier, counsel was "on the way" to impeaching Rolling when the trial court limited his questioning of Rolling to her prescription drug use six months before the aggravated burglary.[52] Lemeunier points to Rolling's testimony regarding the prescriptions she had filled in August 2003, shortly before the aggravated burglary.[53] Rolling testified that she was on vacation in August 2003, and defense counsel, utilizing Rolling's prescription records, impeached her based upon records showing she had three prescriptions filled in August.[54] At that point, the prosecutor objected to defense counsel's questioning, arguing that it was not relevant.[55] After a lengthy argument outside the jury's

---

[52]Rec. Doc. No. 4-1, p. 26.

[53]Id.

[54]St. Rec. Vol. 2 of 8, pp. 419-20.

[55]Id. at 420.

presence,[56] the trial court denied the prosecutor's objection to the <u>entire</u> line of questioning, but determined that prescription records earlier than six months before the aggravated burglary were irrelevant.[57]  The transcript reflects that defense counsel's subsequent cross-examination of Rolling was vigorous and in no way hindered by the trial court's ruling.  Counsel thoroughly questioned Rolling[58] to the point that she became agitated, claiming the records were incorrect.

> Q.  Miss Rolling, is it your testimony that the nearly 500 Lortabs that are - - that from these records indicate that you got those prescriptions filled - - that you never got . . . those prescriptions filled?
> A.  - - it indicates that I got them filled, yes, but that - - That's not so.
> Q.  So, when you told - - well, let's get back to my original question.  In your statement to the police, "What medication do you take?"
> A.  Lortabs.
> Q.  That was a lie?
> A.  It was the truth.  I took Lortabs.
> Q.  "What medication do you take?"  "Lortabs."  You also take - -
> A.  Sir, at the time - -
> Q.  - - alprazolam - -
> A.  - - when I told him that, I was upset.  I was nervous.  I mean, in fact, I didn't think that it was really anybody's concern about my personal business at that time.  You know, I don't know the law.  To me, that was a private - - a private thing with me.
> Q.  Did you tell him that when he simply asked - -
> A.  No, I didn't tell - -
> Q.  - - the question - -
> A.  - - I wasn't going to tell him, "I can't tell you 'cause it's private."

[56]<u>Id</u>. at p. 420-32.

[57]<u>Id</u>. at 432-35.

[58]<u>Id</u>. at 435-54.

Q. So the fact of the matter, ma'am, very simply put, you didn't tell the truth to Matthew Pervis, Deputy from Kenner?
A. Yes, I did tell him the truth. I told him I took Lortabs. That's the truth.
Q. So you sort of fudged a little bit; you didn't tell him abut the methadone, you didn't tell him about - -
A. No, I didn't.
Q. - - the Somas - -
A. No, I didn't sir. I didn't - -
Q. - - you didn't tell them about - -
A. - - because I didn't think that it was anyone's business but mine. It was private. My husband was sitting there next to me. My husband was not even aware that I went to pain management, okay . . . . At the time - - I mean, I've never been through anything like this. This - - to me, that was very personal, and I thought I had a right; but, evidently, I don't.[59]

As noted above, a defendant's right to present a defense is not unlimited. Jimenez, 458 F.3d at 147. "[T]he Confrontation Clause only guarantees 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" Pennsylvania v. Ritchie, 480 U.S. 39, 53 (1987) (emphasis original) (quoting Delaware v. Fensterer, 474 U.S. 15, 20 (1985)); see also Rizzo v. Smith, 528 F.3d 501, 506 (7th Cir. 2008).

I find that Lemeunier was not denied a fundamentally fair trial by virtue of the trial court's ruling limiting defense counsel's use of Rolling's prescription records. He was fully able to present the defense he sought to assert concerning his alleged presence at the victims' home to purchase pills, rather than to burglarize it. The factfinder rejected that defense, as it was entitled to do given the other evidence of his guilt. The state courts'

---

[59]St. Rec. Vol. 2 of 8, pp. 452-54.

rejection of Lemeunier's claim was not contrary to and does not involve an unreasonable application of clearly established Supreme Court law.

VII.    INSUFFICIENCY OF EVIDENCE (CLAIM 4)

Lemeunier argues that the State failed to prove he had the specific intent to commit a felony or theft. To support this argument, Lemeunier relies upon Larry Rolling's testimony that he never heard Lemeunier demand anything.

Under Jackson v. Virginia, 443 U.S. 307 (1979), this court must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. Id., 443 U.S. at 319; Perez v. Cain, 529 F.3d 588, 594 (5th Cir. 2008); Williams v. Cain, 408 Fed. Appx. 817, 821 (5th Cir. 2011). Thus, to determine whether commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law. Perez, 529 F.3d at 594 (citing Jackson, 443 U. S. at 324 n. 16). The court's consideration of the sufficiency of the evidence extends only to what was presented at trial. See McDaniel v. Brown, 558 U.S. 120, 130 S.Ct. 665, 672, 674 (2010) (recognizing that a reviewing court must consider the trial evidence as a whole under Jackson); Johnson v. Cain, 347 Fed. Appx. 89, 91 (5th Cir. 2009) (Jackson standard relies "upon the record evidence adduced at the trial") (quoting Jackson, 443 U.S. at 324).

Review of the sufficiency of the evidence, however, does <u>not</u> include review of the <u>weight</u> of the evidence or the <u>credibility</u> of the witnesses, because those determinations are the exclusive province of the jury. <u>United States v. Young</u>, 107 Fed. Appx. 442, 443 (5th Cir. 2004) (citing <u>United States v. Garcia</u>, 995 F.2d 556, 561 (5th Cir. 1993)); <u>see</u> <u>Jackson</u>, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). Thus, all credibility choices and conflicting inferences must be resolved in favor of the verdict. <u>Ramirez v. Dretke</u>, 398 F.3d 691, 695 (5th Cir. 2005).

A reviewing federal habeas court is <u>not</u> authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses for that of the fact-finder. <u>Alexander v. McCotter</u>, 775 F.2d 595, 598 (5th Cir. 1985). In addition, "[t]he <u>Jackson</u> inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'" <u>Santellan v. Cockrell</u>, 271 F.3d 190, 193 (5th Cir. 2001) (quoting <u>Herrera v. Collins</u>, 506 U.S. 390, 402 (1993)).

Lemeunier was charged with and convicted of aggravated burglary. As noted above, aggravated burglary is defined in La. Rev. Stat. § 14:60, in pertinent part, as follows:

> Aggravated burglary is the unauthorized entering of any inhabited dwelling, or any structure . . . where a person is present, with the intent to commit a felony or any theft therein, if the offender,

32

(1) Is armed with a dangerous weapon; or
(2) After entering arms himself with a dangerous weapon; or
(3) Commits a battery upon any person while in such place, or in entering or leaving such place.

Aggravated burglary is a specific intent crime. State v. Welch, 2010 WL 532386, *5 (La. App. 1st Cir. 2/12/10); State v. Brandenburg, 949 So.2d 625, 633 (La. App. 3rd Cir. 2/7/07).[60]  Specific intent "is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. Rev. Stat. §14:10(1).  Under Louisiana law, intent need not be proven directly but may be inferred from the actions of the defendant and the circumstances surrounding those actions.  State v. Tate, 851 So.2d 921, 930 (La. 2003) (citing State v. Brooks, 505 So.2d 714, 717 (La. 1987)); State v. Sharlhorne, 554 So.2d 1317, 1321 (La. App. 1st Cir. 1989).

The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness.  Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon determination of the credibility of witnesses, the matter is one of the weight of the evidence, not its sufficiency.  The trier of fact's determination of the weight of evidence is not subject to appellate review.  An appellate court will not

---

[60]At trial, the jury was instructed:
Aggravated Burglary is the unauthorized entering of any dwelling, with the specific intent to commit a felony or theft therein, if the defendant is armed with a dangerous weapon or arms himself with a dangerous weapon after entering or commits a battery upon any person while in such place or commits a battery while entering or leaving such a place. St. Rec. Vol. 1 of 8, p. 156.

reweigh the evidence to overturn a factfinder's determination of guilt.  State v. Taylor, 97-2261, pp. 5-6 (La. App. 1st Cir. 9/25/98), 721 So.2d 929, 932.

In support of his argument that the State failed to prove the requisite intent, Lemeunier relies heavily upon the testimony of Larry Rolling.  Larry Rolling testified that he opened the door and an arm came through and began spraying him with pepper spray. He then fell to his knees and placed his body against the door to keep the intruder from getting further into the house.  His wife grabbed the phone, called 9-1-1, the intruder said, "Don't call the police," then the intruder pulled his arm from the door and left the scene.[61] When asked whether he heard anything else, Rolling stated: "I was concentrating on holding the door. I wasn't worried about anything but the door because I didn't want nobody, whoever it was, to get in."  Rolling held his head down because he did not want to receive a second blast of pepper spray.[62]  Because Larry Rolling did not hear Lemeunier make any demands for medicine or anything else, Lemeunier argues that there was insufficient evidence showing he intended to commit a felony or theft.

Sharlene Rolling testified that she was acquainted with Lemeunier before this incident.  Lemeunier had been friends with her grandson, Danny, before Danny went to prison, and she had seen Lemeunier with her daughter, Christine.[63]  On the night of the

---

[61]St. Rec. Vol. 2 of 8, p. 268.

[62]Id. at p. 271.

[63]Id. at p. 360-61.

incident, Ms. Rolling heard a knock on the door, looked out the window, saw Lemeunier and went to get her husband because she was afraid to answer the door.[64]  When her husband began to open the door, Lemeunier's arm shot through, he began spraying pepper spray and her husband fell to the floor, trying to keep the door closed with his body.  She too tried to hold the door against the intruder, but her husband yelled for her to "get back," and she called 9-1-1.[65]  While she was calling 9-1-1, she heard Lemeunier say over and over again, "give me the med," "give me the medicine."[66]  Rolling stated there was no doubt in her mind that she heard Lemeunier demanding "meds."[67]  Thereafter, when she began talking to the 9-1-1 operator, Rolling heard Lemeunier holler, "don't call the cops."[68]

As noted above, when there is conflicting factual testimony, the resolution of which depends upon witness credibility, the matter is one of the weight of the evidence, an issue squarely within the purview of the trier of fact.  In this case, there was no direct conflict in the testimony of Larry Rolling and his wife.  Larry Rolling had been sprayed in the face with pepper spray, had fallen to the floor and was strenuously pushing against the door

---

[64]Id. at pp. 365-66.

[65]Id. at pp. 368-69.

[66]Id. at p. 372.

[67]Id.

[68]Id. at p. 373.

with his body to prevent Lemeunier from gaining further access into his home. The fact that he did not hear anything other than Lemeunier hollering at his wife not to call the police is understandable.

Ms. Rolling clearly testified that she heard LeMeunier demanding medicine. The defense therefore had the testimony it sought to make its argument. The factfinder clearly rejected that argument, and there was substantial evidence from which it was entitled to conclude that LeMeunier's intent was to commit burglary. Viewing the evidence in the light most favorable to the prosecution, I find that a rational trier of fact could easily have found that Lemeunier had the specific intent to commit a felony or theft. The state courts' rejection of Lemeunier's insufficient evidence claim does not represent an unreasonable application of Supreme Court law to the facts of this case.

## VIII. DENIAL OF A MEANINGFUL APPEAL AND EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL(CLAIMS 6 and 7)

Lemeunier contends that he was denied a meaningful appeal and effective assistance of appellate counsel because he was not provided with a "complete transcript." Lemeunier states that there was no transcript of the hearing of his motion for production of Sharlene Rolling's medical records. As a result, "appellate counsel, who was not trial counsel," had no idea that the motion transcript was missing and did not raise an argument with respect to the missing transcript.[69] Lemeunier also argues that appellate counsel was

---

[69]Rec. Doc. No. 4-1, pp. 40 and 46. As noted on p. 6, appellate counsel did in fact raise the instant argument. St. Rec. Vol. 8 of 8, Brief of Appellant at pp. 17-18.

ineffective because his claim that Lemeunier should have been provided with Rolling's medical records was not properly briefed, and the Louisiana Fifth Circuit consequently applied Uniform Rule 2-12.4 of the state appeal court rules and deemed the claim abandoned.[70] Lemeunier also argues that counsel was ineffective in failing to show the relevancy of Rolling's prescription records for a period longer than six months before the crime.[71] Finally, Lemeunier claims that appellate counsel was ineffective because counsel filed with the Louisiana Supreme Court the exact same brief filed in the Louisiana Fifth Circuit.[72]

Lemeunier's claim regarding the missing transcript appears to present a mixed question of fact and law, since the factual basis of the missing hearing transcript must be reviewed and a legal determination made as to whether the absence of the transcript violated Lemeunier's constitutional rights.[73]

It is indisputably true that a criminal defendant has the right to adequate appellate and other review of his conviction based upon a sufficiently complete record. Mayer v. City of Chicago, 404 U.S. 189, 198 (1971). However, the Supreme Court has not held

---

[70]Id. at p. 49; Lemeunier, 986 So.2d at 138.

[71]Id. at p. 51.

[72]Id. at p. 52.

[73]I have located no case law expressly addressing whether an alleged constitutional violation based upon the absence of a transcript of a motion hearing represents a question of fact or law or a mixed question of fact and law for habeas review purposes.

that due process requires a verbatim transcript of the entire proceedings or that an incomplete record confers automatic entitlement to relief.  Instead, federal habeas relief will be granted only upon a showing of <u>prejudice</u> resulting from a missing transcript. <u>Fahy v. Horn</u>, 516 F.3d 169, 190 (3rd Cir. 2008), <u>cert</u>. <u>denied</u>, 537 U.S. 1192 (2003) (citing <u>Scott v. Elo</u>, 302 F.3d 598, 604 (6th Cir. 2002)).

A criminal defendant also has a right to effective assistance of counsel.  The standard for judging performance of counsel was established by the United States Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), in which the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting <u>prejudice</u>. <u>Strickland</u>, 466 U.S. at 697 (emphasis added).  The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness."  <u>Id</u>. at 687–88.  Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id</u>. at 694; <u>United States v. Kimler</u>, 167 F.3d 889, 893 (5th Cir.1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive <u>Strickland</u> standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  <u>Kimler</u>, 167 F.3d at 893.  A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely

than not altered the outcome in the case.' It is not enough under <u>Strickland</u>, however, 'that the errors had some conceivable effect on the outcome of the proceeding.' " <u>Motley v. Collins</u>, 18 F.3d 1223, 1226 (5th Cir.1994) (quoting <u>Strickland</u>, 466 U.S. at 693).

On habeas review, the United States Supreme Court has recently clarified that, under <u>Strickland</u>, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." <u>Harrington v. Richter</u>, _ U.S. _, 131 S.Ct. 770, 788 (2011). The <u>Harrington</u> Court went on to recognize the high level of deference owed to a state court's findings under <u>Strickland</u> in light of the AEDPA:

> The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland's</u> deferential standard.

"A court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." <u>Bell v. Cone</u>, 535 U.S. 685, 697 (2002) (citing <u>Strickland</u>, 466 U.S. at 689). This court must apply the "strong presumption" to counsel's strategy and tactical decisions which fall "within the wide range of reasonable professional assistance."

Strickland, 466 U.S. at 690. A "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'" Johnson v. Dretke, 394 F.3d 332, 337 (5th Cir. 2004) (quoting United States v. Jones, 287 F.3d 325, 331 (5th Cir. 2002)); see also Jones, 287 F.3d at 331 ("Informed strategic decisions of counsel are given a heavy measure of deference and should not be second guessed." (quotation omitted)); Geiger v. Cain, 540 F.3d 303, 309 (5th Cir. 2008) (same). Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. Strickland, 466 U.S. at 689; Moore, 194 F.3d at 591.

The issue of ineffective assistance of counsel is a mixed question of law and fact. Woodfox v. Cain, 609 F.3d 774, 789 (5th Cir. 2010); Richards v. Quarterman, 566 F.3d 553, 561 (5th Cir. 2009). The question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

I find that Lemeunier was not prejudiced as a result of the missing hearing transcript. As discussed above, Lemeunier sought Rolling's medical records to show that Rolling possessed a substantial amount of pain medication and that he went to the Rollings' house to obtain some pain pills, not to burglarize it. However, exactly what Lemeunier sought to obtain from the Rollings' house is immaterial for purposes of

determining his guilt or innocence on the charge of aggravated burglary. Further, Rolling testified extensively about her medical problems and her need for pain medication.

I also find that Lemeunier was not prejudiced by appellate counsel's failure to include argument or legal citation supporting Lemeunier's claim that he should have been provided with Rolling's medical records. The issue was raised in the post-conviction proceedings and addressed on the merits. In rejecting this argument, the Louisiana Fifth Circuit relied on the same reasoning set forth in its direct appeal opinion.[74]

Additionally, Lemeunier was not prejudiced by counsel's alleged failure to show the relevancy of Rolling's prescription records for a period longer than six months before the crime. As noted above, Rolling was subjected to extensive cross-examination regarding her use of pain medication. Lemeunier provides no evidence as to what more could have been accomplished in support of his defense if counsel had prescription records covering a longer time period.

Finally, Lemeunier asserts that counsel was ineffective in submitting to the Louisiana Supreme Court the "identical brief" submitted to the state court of appeal.[75] Lemeunier suggests that because the claims contained in counsel's appeal court brief were rejected, new claims or argument should have been raised in counsel's supreme court brief. Lemeunier's claim is wholly without merit.

---

[74]Lemeunier, No. 2010-KH-839. St. Rec. Vol. 8 of 8.

[75]Rec. Doc. No. 4-1, p. 52.

First, Lemeunier provides no evidence reflecting how he was prejudiced. He sets forth no claims or other argument which counsel should have presented to the supreme court which were not presented to the court of appeal. There is no reason to believe that a mere re-ordering or re-wording of the appellate brief to the supreme court was required as a matter of effective representation or that the arguments presented to the appellate court could have been improved upon. Second, claims generally must first be reviewed by the court of appeal before the claims will be considered by the supreme court. <u>State v. Galliano</u>, 648 So.2d 911 (La. 1995) (case remanded by the supreme court when assignments of error had not first been considered by court of appeal); <u>State v. Thorne</u> 514 So.2d 1170, 1171 (La. 1987) (same). Counsel's presentation of claims to the supreme court which had not been presented and reviewed by the court of appeal would have been futile. Counsel cannot be ineffective for failing to pursue a futile course of action. <u>United States v. Manley</u>, 2011 WL 2259761, *3 (E.D. Pa. 2011); <u>see</u> <u>Lindsey v. Cain</u>, 267 Fed. Appx. 374, *1 (5th Cir. 2008) (counsel is not ineffective by failing to raise frivolous or futile claims) (citing <u>Johnson v. Cockrell</u>, 306 F.3d 249, 255 (5th Cir. 2002)).

Thus, I find Lemeunier's claims that he was denied a meaningful appeal and denied effective assistance of counsel are without merit. The state courts' rejection of these claims was not contrary to or an unreasonable application of clearly established federal law.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that the petition of Lukas Lemeunier for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[76]

New Orleans, Louisiana, this ___23rd___ day of October, 2012.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[76]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.